# EXHIBIT A



ב"ה

## Aliya Diamonds Ltd
### Manufacture, Import & Export
Israel Diamond Exchange. – Maccabi Bldg. – Rm. 248-9
Jabotinsky St., P.O. Box 3063 Ramat Gan, 52520, Israel
Tel: 972-3-575-1521, Fax: 972-3-575-1541

INVOICE NO.      2095                              5/11/2013

TO:B & J DIAMONDS INC
550 So. HILL ST SUITE 1350
LOS ANGELES
CALIFORNIA
USA 90013
TEL 213--6246134

| ST | CARATS | Description | PRICE/CT | Amount |
|----|--------|-------------|----------|--------|
|    | 15.05  | POLISHED  DIAMONDS | $76,412.00 | $1,150,000.00 |
|    | 15.05  | CTS | TOTAL | $1,150,000.00 |

Aliya Diamonds Ltd.

# EXHIBIT B



בס"ד

**Aliya Diamonds Ltd**
248 MACCABI BLDG
RAMAT GAN
ISRAEL
TEL 97235751521

NOV 4TH 2013

INVOICE NO   55
TO:ISAAC DAVIDOWITS LLC
579 5TH AVE #860
NEW YORK NEW YORK
USA
TEL 212-753-4848

| ST | CARATS | Description | PRICE / CT | Amount |
|----|--------|-------------|------------|--------|
| 1 | 15.08 | POLISHED  DIAMONDS<br>GIA CERT NO7151736182 | | $1,150,000.00 |

| | 15.08 | | TOTAL | $1,150,000.00 |

Aliya Diamonds Ltd.
      511319089
PAYMENT DETAILS
DOWNPAYMENT IN ORDER TO SECURE PURCHASE
MOSHE BRONNER
HANG SENG BANK HONG KONG
4 HANKOW RD KOWLOON
SWIFT HASEHKHH
NAME: MOSHE BRONNER
ACC# 024-786-026195-888
DOWN PAYMENT 321000 RECEIVED B&J DIAMOND INC.

FINAL PAYMENT AS PER INSRUCTIONS FROM ALIYA DIAMONDS LTD
TO OWNER OF THE STONE IN TAIWAN
CHU HAN CHENG E.SUN COMMERCIAL BANK
BANHSIN.BRANCH NO5-1 YUANDONG,BANQUIO DISR.NEW TAIPEI CITY
TAIWAN ROC. SWIFT ESUNTWTP
ACC NO 0484-441-00370 CHU HAN CHENG
   US$829000
ALIYA DIAMOND PURCHASED THE STONE DIRECTLY FROM THE OWNER
THROUGH A DIAMOND BROKER IN TAIWAN.
THIS WAS A LEGITIMATE DEAL GUARANTEED BY THE EMPLOYEES OF
ALIYA DIAMONDS AND ITS DIRECTOR MOSHE BRONNER

**EXHIBIT  B**

**Exhibit "B"      Page 1 of 1**

# EXHIBIT C

NYSCEF DOC. NO. 96                                    RECEIVED NYSCEF: 08/25/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------X

LIU TEE SHU,

        Plaintiff,    Index No. 161622/14

   -against-

ISAAC DAVIDOWITS LLC, B&J DIAMONDS  **SECOND AMENDED**
INC., and CARAT & CO., INC.,    **COMPLAINT**

        Defendants

ISAAC DAVIDOWITS LLC and B&J
DIAMONDS, INC.,

   Third Party Plaintiffs,

   -against-

CARAT & CO., INC.,

   Third Party Defendant.

-------------------------------------X

    Plaintiff Liu Tee Shu, by her attorneys, Litman, Asche

& Gioiella, LLP, for their Second Amended Complaint against the

defendants Isaac Davidowits LLC, B&J Diamonds Inc. and Carat &

Co., Inc. alleges:

    1. Plaintiff is a resident of the State of New York,

County of Queens.

    2. Defendant Isaac Davidowits LLC ("Davidowits") is

a New York limited liability company with its principal place of

business in the City, County and State of New York.

3.    Defendant   B&J   Diamonds   Inc.   ("B&J")   is   a
California corporation with a principal place of business in the
State of California, County of Los Angeles.

4.    Defendant Carat & Co., Inc. ("Carat") is a New
York corporation with its principal place of business in the
State of New York, County of Queens.

5.    This court has jurisdiction over the defendants
and venue in this Court is proper because of the location of
defendant Davidowits' principal place of business.

6.    Plaintiff is the owner of a diamond ring weighing
in excess of 15 carats.

7.    Plaintiff purchased the ring in 2004.   The ring
was   in   plaintiff's   possession,   custody   or   control   until
approximately July 16, 2012.   On or about that date, plaintiff
had brought the ring to Carat for cleaning.   The owner of Carat
handed the ring to an employee of Carat who brought the ring to
another area of the jewelry store.   When the ring was returned
to plaintiff, the employee had substituted a cubic zirconia of
approximately equal size for the 15+ carat diamond.

8.    Plaintiff duly reported the loss of the diamond
to the New York City Police Department and to the Federal Bureau
of Investigation.

9.    In or about October 2014, plaintiff learned that
a diamond with the same weight (less a fraction of a carat cut

2

2 of 6

<u>Exhibit "C"     Page 2 of 6</u>

for cosmetic purposes) and the identical description, including the location of flaws in the diamond was being offered for sale by defendant Davidowits.  Descriptions of and flaws in diamonds are similar to fingerprints in that no two diamonds are exactly alike.  Copies of the description of the diamond by the Gemological Institute of America (GIA) as of the time it was purchased by plaintiff, and as provided to defendant after defendant acquired it from a thief, demonstrate that defendant is in possession of plaintiff's diamond.

10.  Upon information and belief, defendant Davidowits purchased the diamond in partnership with defendant B&J, each claiming to be a 50% owner.

11.  The diamond being offered by defendants is the diamond stolen from plaintiff in 2012.

12.  Defendants have no possessory or ownership right to the diamond, the diamond having been acquired from a thief.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DAVIDOWITS AND B&J DIAMONDS

13.  Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1-12 of this Complaint with the same force and effect as though set forth at length herein.

14.  Plaintiff is entitled to an order and judgment, directing that defendants return to plaintiff her 15+ carat diamond in their possession.

3

3 of 6

**Exhibit "C"     Page 3 of 6**

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST DAVIDOWITS AND B&J DIAMONDS

15.   Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1-14 of this Complaint with the same force and effect as though set forth at length herein.

16.   The diamond has a value of approximately $1.2 to $1.4 million dollars.

17.   Plaintiff is entitled to damages in the amount of $1.4 million.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST DAVIDOWITS AND B&J DIAMONDS

18.   Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1-17 of the Complaint with the same force and effect as though set forth at length herein.

19.   Defendants have offered the diamond for sale.

20.   If the diamond is sold, plaintiff will be irreparably harmed.

21.   Plaintiff has no adequate remedy at law.

### AS AND FOR A FOURTH
### CAUSE OF ACTION AGAINST CARAT

22.   Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1-21 of the Complaint with the same force and effect as though set forth at length herein.

23.   Carat's employee who substituted a cubic zirconia for plaintiff's diamond was acting within the scope of his

4

**Exhibit "C"     Page 4 of 6**

employment by defendant and in furtherance of defendant's business, and his tortious conduct was a natural incident of that employment.

24. The substitution of the cubic zirconia for the diamond was reasonably foreseeable by defendant.

25. Defendant is responsible for the conversion of plaintiff's diamond by defendant's employee pursuant to the doctrine of respondeat superior.

AS AND FOR A FIFTH
CAUSE OF ACTION AGAINST CARAT

26. Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1-25 of this Complaint with the same force and effect as though set forth at length herein.

27. Carat failed to use reasonable care to safeguard plaintiff's property given to defendant in bailment.

AS AND FOR A SIXTH CAUSE
OF ACTION AGAINST CARAT

28. Plaintiff repeats and reiterates each and every allegation contained in Paragraphs 1-27 of the Complaint with the same force and effect as though set forth at length herein.

29. Carat breached its agreement with plaintiff to polish the ring and return it in its original condition to plaintiff.

WHEREFORE, plaintiff demands judgment against the defendants Isaac Davidowits LLC and B&J Diamonds, Inc.:

Exhibit "C"    Page 5 of 6

a)   on   the   first   cause   of   action   directing   that
defendants return the diamond to plaintiff;

b)   or   in   the   alternative,   on   the   second   cause   of
action for damages in the amount of $1.4 million;

c)   on   the   third   cause   of   action,   preliminarily,
temporarily   and   personally   enjoining   defendants   from   selling   or
deposing   of   the   diamond   or   removing   it   from   the   State   of   New
York; and

d)   Plaintiff   demands   judgment   against   the   defendant
Carat   &   Co.,   Inc.   on   the   fourth,   fifth   and   sixth   causes   of
action   awarding   damages   in   excess   of   $1.4   million,   together   with
interest and costs.

Dated:    New York, New York
          August 25, 2016

                         Litman, Asche & Gioiella, LLP
                         Attorneys for Plaintiff

                         By:/S/ Richard M. Asche
                                Richard M. Asche

                         666 Fifth Avenue – 17th Floor
                         New York, New York  10103
                         (212) 809-4500

TO:
Hilton Soniker, Esq.
Kamerman, Uncyk, Soniker & Klein, P.C.
1700 Broadway – 42nd floor
New York, New York 10019

Bruce Povman, Esq.
Morton Povman, P.C.
108-18 Queens Boulevard
Forest Hills, New York 11375

**Exhibit "C"    Page 6 of 6**

**EXHIBIT D**

Complaint# 2013-109-06527                                                     Page 1 of 3

| | New York City Police Department | | |
|---|---|---|---|
| | Omniform System – Complaints | | 000003 |

| Report Cmd: 109 | Jurisdiction: N.Y. POLICE DEPT | Record Status: Final, No Arrests | Complaint #: 2013-109-06527 |
|---|---|---|---|

**Occurrence Location: INSIDE OF 37-09 MAIN STREET**

| | Precinct: 109 |
|---|---|
| Name Of Premise: | Sector: I |
| Premises Type: JEWELRY | Beat: |
| Location Within Premise: | Post: 7 |
| Visible By Patrol?: NO | |

**Occurrence From: 2012-07-16 13:00 MONDAY**

| | Aided # |
|---|---|
| Occurrence thru: 2013-08-12   14:00 | Accident # |
| Reported: 2013-08-12   16:00 | O.C.C.B. # |
| Complaint Received: WALK-IN | |

| **Classification: GRAND LARC** | **Case Status: OPEN** |
|---|---|
| Attempted/Completed: COMPLETED | Unit Referred To: P.D.U. |
| Most Serious Offense is: FELONY | Clearance Code: |
| PD Code: 439   LARC,GR FROM OPENAREA UNATTEND | Log/Case #: 0 |
| PL Section: 15542 | File #: 8 |
| Keycode: 109   GRAND LARCENY | Prints Requested? NO |

| Is This Related To Stop And Frisk Report NO | SQF Number: 0000-000-00000 | Was The Victim's Personal Information Taken Or Possessed? NO | Was The Victim's Personal Information Used To Commit A Crime? NO |
|---|---|---|---|
| Gang Related? NO | OCCB FOD Log #: | Name Of Gang: | Child Abuse Suspected? NO |
| DIR Required? NO | | Child In Common? NO | Intimate Relationship? NO |

| If Burglary: | Alarm: | If Arson: | Taxi Robbery: |
|---|---|---|---|
| Forced Entry? | Bypassed? | Structure: | Partition Present: |
| Structure: | Comp Responded?: | Occupied?: | Amber Stress Light Activated: |
| Entry Method: | Company Name/Phone: | Damage by: | Method of Conveyance: |
| Entry Location: | Crime Prevention Survey Requested?: | | Location of Pickup: |
| | Complaint/Reporter Present?: | | |

| Supervisor On Scene - Rank / Name / Command : INS MAGUIRE 109 | Canvas Conducted: NO | Translator(If used): GEORGE SHU 106-52 67 RD 9179290266 CHINESE |
|---|---|---|

**NARRATIVE:**
C/V PRESENT AT THE 109 SH AND STATES THAT AT T/P/O SHE BROUGHT HER DIAMOND TO BE CLEANED, HANDING IT TO STORE EMPLOYEE. EMPLOYEE DID THEN BRING IT DOWNSTAIRS FOR CLEANING, RETURNING 20 MINUTES LATER WITH DIAMOND IN OPEN BOX, HANDING IT BACK TO C/V. C/V TOOK DIAMOND OUT TO WEAR ON 8-12-13 WHEN SHE REALIZED IT WAS NOT HER ORIGINAL DIAMOND. SHE THEN BROUGHT HER DIAMOND TO A JEWELER TO CONFIRM AND JEWELER STATED IT WAS A CUBIC ZIRCONIA. CARAT & CO. EMPLOYEE IS A RELATIVE OF THE STORE OWNER'S WIFE. DET. HILT -109 SQD NOTIFIED.CARAT & CO. #718-888-3590. C/V CAN ID EMPLOYEE.

**No NYC TRANSIT Data for Complaint # 2013-109-06527**

| Total Victims: 1 | Total Witnesses: 0 | Total Reporters: 1 | Total Wanted: 0 |
|---|---|---|---|

| *VICTIM: # 1 of 1* | Name: SHU,LIU TEE | Complaint#: 2013-109-06527 |
|---|---|---|

| Nick/AKA/Maiden: | Gang/Crew Affiliation: |
|---|---|
| UMOS: NO | Name: |
| Sex/Type: FEMALE | Identifiers: |
| Race: ASIAN/PACIFIC | |
| Age: 69 | |

**Exhibit "D"      Page 1 of 1**

**EXHIBIT E**

# DEMAND FOR ARBITRATION

**ARBITRATION TRIBUNALS**
**DIAMOND DEALERS CLUB, INC.**

1. <u>Agreement pursuant to which arbitration is sought:</u>
   Article XII of the By-Laws of the Diamond Dealers Club, Inc., and agreement by member to arbitrate contained in the signed membership application to Diamond Dealers Club, Inc. or arising out of the By-Laws and Rules of the World Federation of Diamond Bourses to which each member agreed to be bound in his Diamond Dealers Club, Inc. membership application.

2. <u>Name and Address of Party serving the notice:</u>
   Mr. Isaac Davidowits
   Isaac Davidowits LLC
   50 West 47th Street, Suite 1010
   New York, NY 10036

3. <u>Name and Address of Party served against whom arbitration claim is sought:</u>
   Mr. Moshe Bronner
   Israel Diamond Exchange
   248 Maccabi Building
   1 Jabotinsky Street
   Ramat Gan, Israel

4. <u>Nature of dispute:</u>
   Claim or controversy arising out of or related in any way to the diamond, precious stone, or jewelry business by a member against a member or group of members and or by or against members of any other diamond bourse which is affiliated with the World Federation of Diamond Bourses in accordance with the By-Laws and Rules of the World Federation of Diamond Bourses.

5. <u>Claim sought:</u>
   See attached claim made a part hereof.

6. <u>Hearing Locale Requested:</u>
   Diamond Dealers Club, Inc.
   Arbitration Tribunals
   580 Fifth Avenuet, 10th Floor
   New York, New York 10036
   (212) 790-3600

7. Please take further notice that, unless within twenty (20) days after service of this demand for arbitration, you apply to stay the Arbitration herein pursuant to Article 75 of the New York Civil Practice Law and Rules, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

**Dated:**
   September 7 , 2017

   _____ Signature of party serving the notice.
   Isaac Davidowits

<u>Exhibit "E"    Page 1 of 8</u>

## Claim of Isaac Davidowits against Moshe Bronner

I, Isaac Davidowits am a member of The Diamond Dealers Club Inc. ("DDC") and wish to bring a claim against Moshe Bronner ("MB") of Aliya Diamond Inc. ("Aliya"), a member of the Israel Bourse, in connection with Aliya's November 2013 sale of a 15.05 carat diamond ("Diamond") to my company, Isaac Davidowits LLC (Isaac Davidowits LLC and Isaac Davidowits will hereinafter be referred to separately and collectively as "ID"), and our partner, B&J Diamonds of Los Angeles, California ("B&J").  A copy of the original November 5, 2013 invoice from Aliya to B&J is attached as **Exhibit A** ("Original Invoice").  Though B&J and its principals are not members of any diamond bourse, we wish to commence this action under the Rules of the DDC and World Federation of Diamond Bourses, because B&J and ID own undivided interests in the Diamond and purchased the Diamond together in November 2013 from Aliya and MB.  In 2014, because we had not received a copy of the Original Invoice from B&J, my son Abraham asked B&J's principal to provide us with a copy of the invoice.  Thinking that ID was requesting a separate invoice made out in its name, B&J requested a new invoice from Aliya.  As a result, in or about June 2014, MB and his company, Aliya, issued a substitute invoice for the Original Invoice, which was made out to ID and dated November 4, 2013 ("Replacement Invoice").  A copy of the Replacement Invoice is attached as **Exhibit B**.  MB and Aliya made express representations to ID in the Replacement Invoice that tracked the commercial understanding of the parties at the time of the sale: that Aliya would stand surety for the *bona fides* of the Diamond it had sold us and B&J.

The Replacement Invoice reflects that MB personally was paid $321,000 of the $1,150,000 purchase price of the Diamond by wire from B&J to MB's bank account in Hong Kong; and that, at MB's direction, ID paid the $829,000 balance of the purchase price to Chu Hang Cheng, whom MB identified as the previous owner of the stone in Taiwan and from whom Aliya acquired title.  Significantly, ID and B&J are equal partners in the Diamond and adjusted

the sums paid between themselves.  MB represented at the bottom of the Replacement Invoice that:

        1.     Aliya Diamond purchased the stone directly from the owner through a diamond broker in Taiwan;

        2.     This was a legitimate deal guaranteed by the employees of Aliya Diamonds and its director, Moshe Bronner.

### Prior Proceeding

In or about November 2014, Isaac Davidowits LLC was sued by a certain Liu Tee Shu.  Ms. Shu claims that she is the rightful owner of the Diamond and that in or about July 2012, the Diamond was stolen from her by a local jewelry store to which she entrusted the Diamond for cleaning.  Ms. Shu claims that the Diamond (mounted in a ring) was replaced with a cubic zirconia stone by the local jeweler.  Ms. Shu asserts that she discovered that her Diamond had been replaced with a cubic zirconia approximately one year after the alleged theft, and she filed a police report on August 12, 2013.  Ms. Shu then commenced a lawsuit against the local jewelry store, Carat & Co., Inc. of Queens, New York, and ultimately commenced another action against ID in the Supreme Court, New York County ("Shu Action").  In the Shu Action, Shu alleges that ID does not have good title to the Diamond, notwithstanding the fact that ID purchased the Diamond in the ordinary course of its business, for value, and without knowledge of any claim of ownership by another party, because (she alleges) the Diamond is stolen property.  The Shu Action has dragged on for longer than expected for various reasons, and the parties to the Shu Action are currently in discovery.  It is unlikely that the Shu Action will go to trial before the spring of 2018.[1]

While ID has been waiting for a resolution or determination of the Shu Action before commencing an industry arbitration against MB and Aliya, we are now faced with the potential expiration of the 4-year statute of limitations governing sale transactions between merchants,

---

[1] Shu, ID and B&J are engaged in settlement negotiations.  If those parties reach a settlement, we will revise this Statement of Claim accordingly.

**Exhibit "E"    Page 3 of 8**

which Aliya may argue runs from the date of the sale and thus expires at the beginning of November 2017.  Although ID has other claims against MB and Aliya that will survive beyond the four-year statute of limitations, and believes that the date on which the statute for such claims would begin to run would be the date of loss of the Shu Action, if any, it would be substantially prejudicial to ID and B&J if they could not pursue claims against MB and Aliya, based on the two invoices, which are subject to a four-year statute of limitations.  Thus, in an abundance of caution, ID brings this claim now.

### Single Claim

Based on the foregoing, ID, on its own behalf and on behalf of its partner in the Diamond, B&J, hereby requests that ID be permitted to commence an industry arbitration against Aliya and MB in connection with the Diamond for breach of contract, based on Aliya's sale of a Diamond to which it did not have rights or title (if, as Shu claims, the Diamond was stolen and Aliya did not acquire good title in Taiwan), and for a breach of the representations and warranties given by MB and Aliya, implicitly and then explicitly in the Replacement Invoice.

The Diamond is a single item that is not divisible.  ID and B&J each owns an undivided fifty percent (50%) interest in the Diamond.  Further, if the entire claim regarding the Diamond is not adjudicated in a single forum, the parties (including MB) will be forced to incur duplicate litigation/arbitration costs, and determinations in two forums could potentially be inconsistent.  We trust MB and Aliya will share these concerns and agree to an industry arbitration that includes B&J.

Although we respectfully request that all claims relating to the Diamond be heard in an industry arbitration, if it is determined that our claim cannot proceed as an industry arbitration because of the involvement of B&J, we respectfully request permission to bring ID's claims, together with the claims of our partner, B&J, against Aliya and MB in the Federal Court of New York.

3

**Amount of Claim**

In addition to seeking repayment of the $1,150,000 purchase price which was paid at MB's direction, $321,000 to MB's Hong Kong personal account and $829,000 to Chu Hang Cheng in Taiwan (the owner from whom Aliya represented it purchased the stone directly), ID (and B&J) demands reimbursement for the fees and costs it has been forced to incur in defending the Shu Action and the interest charges incurred due to the fact that ID (and B&J) has been unable to sell the Diamond for approximately three years due to Shu's claim.  The amount of the legal fees and interest charges incurred by ID (and B&J) will be submitted at the arbitration hearing.  Further, in reliance on the fact that ID and B&J believed they acquired good title to the Diamond from Aliya and MB, ID improved several features of the Diamond, including upgrading the Diamond's color from an E to a D color, and the Diamond is now worth at least (or approximately) $1,450,000.  To the extent ID is forced to return the Diamond in the Shu action, ID will be denied the profit that resulted from its expertise and improvement of the Diamond, which is the only reason ID and B&J purchased the stone in 2013.  We demand the lost profit of $300,000 that we created in the Diamond.

**Venue of Arbitration**

We ask that the arbitration be held in the offices of the DDC in New York, since the Diamond is presently located in New York and is in the possession of ID, a member of the DDC. Further, as reflected in the Original and Replacement Invoices, MB knew the Diamond was initially sent to California and subsequently located in New York, in ID's custody.  The Diamond is subject to a court ordered stipulation that the Diamond not be sold, transferred or removed until the determination or settlement of the Shu Action.  MB, who is a member of the Israeli Bourse, has no basis to claim that the Israel Bourse should have jurisdiction over this transaction.  It is incontestable that MB and the Diamond were in Taiwan at the time of the sale in November 2013.  MB purchased the Diamond when he was in Taiwan in early November 2013, and then took the Diamond from Taiwan to Hong Kong to ship the Diamond to B&J in Los Angeles, California.  We were also advised by MB that Aliya maintained an office in

4

**Exhibit "E"      Page 5 of 8**

Taiwan in 2013.  Both Aliya and MB are subject to jurisdiction in New York, as MB frequently travels to New York to conduct Aliya business here.

We have asked MB, through his Israeli attorney, whether he would agree to "toll" (extend) the statute of limitations, until the Shu Action is decided or resolved.  However, to date, MB has not agreed to toll the four-year statute of limitations.

As stated above, it is essential that this matter be heard and determined in a single forum.  Although we urge the DDC, Israeli Bourse and WFDB, if it becomes involved in this determination, to allow all of the claims relating to the Diamond to proceed as an industry arbitration, despite the fact that our partner in the Diamond, B&J, is not a member of any bourse; if it is determined that our claim cannot proceed as an industry arbitration because of the involvement of B&J, we respectfully request permission to bring ID's claims, together with the claims of our partner, B&J, against Aliya and MB in the Federal Court of New York.

### Stay the Arbitration Proceeding until the Shu Action Is Determined or Settled

In addition to asking the DDC, Israel Bourse and the WFDB to (i) accept jurisdiction of this case, which includes our partner, B&J Diamonds, which is not a member of any diamond bourse, and (ii) designate New York and the DDC office with jurisdiction over the case and as the venue of any hearings; we also respectfully request that the proceeding be accepted for filing and stayed until the Shu Action is decided by the Court or settled, so that the actual amount of the damages we suffered as a result of our purchase of the Diamond from MB and Aliya are determined.

Respectfully submitted,

Isaac Davidowits

5



בס"ד

## Aliya Diamonds Ltd
### Manufacture, Import & Export
Israel Diamond Exchange. – Maccabi Bldg. – Rm. 248-9
Jabotinsky St., P.O. Box 3063 Ramat Gan, 52520, Israel
Tel: 972-3-575-1521, Fax: 972-3-575-1541

INVOICE NO.   __2095__                          5/11/2013

TO:B J DIAMONDS INC
550 So. HILL ST SUITE 1350
LOS ANGELES
CALIFORNIA
USA 90013
TEL 213--6246134

| ST | CARATS | Description | PRICE / CT | Amount |
|----|--------|-------------|-----------|--------|
|    | 15.05  | POLISHED  DIAMONDS | $76,412.00 | $1,150,000.00 |
|    | 15.05  CTS |          | TOTAL | $1,150,000.00 |

Aliya Diamonds Ltd.

EXHIBIT A

**Exhibit "E"     Page 7 of 8**



בס״ד

Aliya Diamonds Ltd
248 MACCABI BLDG
RAMAT GAN
ISRAEL
TEL 97235751521

NOV 4TH 2013

INVOICE NO      55
TO:ISAAC DAVIDOWITS LLC
579 5TH AVE #860
NEW YORK NEW YORK
USA
TEL 212-753-4848

| ST | CARATS | Description | PRICE / CT | Amount |
|----|--------|-------------|------------|--------|
| 1 | 15.08 | POLISHED DIAMONDS GIA CERT NO7151736182 | | $1,150,000.00 |

|  | 15.08 | | TOTAL | $1,150,000.00 |

Aliya Diamonds Ltd.
511319089
PAYMENT DETAILS
DOWNPAYMENT IN ORDER TO SECURE PURCHASE
MOSHE BRONNER
HANG SENG BANK HONG KONG
4 HANKOW RD KOWLOON
SWIFT HASEHKHH
NAME: MOSHE BRONNER
ACC#  024-786-026195-888
DOWN PAYMENT 321000 RECEIVED B&J DIAMOND INC.

FINAL PAYMENT AS PER INSRUCTIONS FROM ALIYA DIAMONDS LTD
TO OWNER OF THE STONE IN TAIWAN
CHU HAN CHENG E.SUN COMMERCIAL BANK
BANHSIN.BRANCH NO5-1 YUANDONG,BANQUIO DISR.NEW TAIPEI CITY
TAIWAN ROC. SWIFT ESUNTWTP
ACC NO 0484-441-00370 CHU HAN CHENG
US$829000
ALIYA DIAMOND PURCHASED THE STONE DIRECTLY FROM THE OWNER
THROUGH A DIAMOND BROKER IN TAIWAN.
THIS WAS A LEGITIMATE DEAL GUARANTEED BY THE EMPLOYEES OF
ALIYA DIAMONDS AND ITS DIRECTOR MOSHE BRONNER

**EXHIBIT  B**

**Exhibit "E"      Page 8 of 8**